OCTOBER AND NOVEMBER TERM, 1882, No. 153. OCTOBER 23, 1882.

## The Commonwealth of Pennsylvania *ex-relatione* Henry W. Palmer, Attorney General, *vs.* David R. Callen.

1. Article IV, section 8, of the Constitution of 1874, does not apply to any offices of an elective character, except those which are to be filled at the general election.

2. When, therefore, an alderman of the city of Allegheny was elected at the annual spring election, February 21, 1882, to fill a vacancy caused by the death of the previous incumbent on December 10, 1881; *held* on demurrer to *quo warranto* that he was entitled to the office.

Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, and GREEN, JJ., STERRETT, J., absent.

Error to the Court of Common Pleas No. 2, *Allegheny county.*

*Quo warranto* by the Commonwealth *ex relatione,* Henry W. Palmer, Attorney General, directed to David R. Callen to determine his right to hold and exercise the office of alderman in the Sixth ward of the city of Allegheny.

The suggestion of the Attorney General set forth that by reason of the death of Charles W. Rado, on December 10, 1881, who was an alderman of the Sixth ward of the city of Allegheny, elected for the term of five years from the first Monday of May, 1880, "a vacancy happened in the said office within three calendar months immediately preceding the next general election," "that the said David R. Callen pretends to be entitled to hold and exercise the said office under a commission under the hand of the Governor and the Great Seal of the Commonwealth, bearing date the 22d day of March, 1882, and purporting to be issued in pursuance of an election for said office of Alderman of the Sixth ward of the said city, on the 21st day of February last past, being the general election day next succeeding the happening of the aforesaid vacancy ; and that without any lawful warrant, but under color of the commission last above mentioned, he, the said David R. Callen, has from the time aforesaid used, and does still use and exercise the powers, jurisdictions, rights, emoluments and privileges appertaining to said office."

David R. Callen demurred to the writ because it did not appear by the suggestion of the Attorney General that his election to the office of Alderman of the said

[The Com. of Pa. *ex-rel.* H. W. Palmer, Att'y Gen'l *v.* D. R. Callen.]

ward was unlawful ; and he averred that by the provisions of the act of June 21, 1839, (Purd. Dig., 843,) and the supplement thereto of March 22, 1877, (Purd. Dig., 2135,) his election on that date was lawful.

The Court, after argument, entered judgment for the defendant on the demurrer, WHITE, J., filing the following opinion :

"Under the act of Assembly of 21st June, 1839, Purdon's Digest, p. 843, aldermen and justices of the peace were to be elected at the time fixed for the election of constables. By section seven, if any vacancy occurred by a refusal to accept, or by death, resignation, or otherwise, the vacancy was to be filled 'at the next election, and such election shall be held and conducted in the same manner as the other elections for justices under this act.'

By section one, of the act of 6th May, 1874, Purdon's Digest, p. 1889, in the case of vacancy from whatever cause, the Governor was authorized to appoint some suitable person to fill the vacancy, and commission him to hold the office until thirty days after the next annual municipal or township election, 'at which election his successor shall be elected.'

By the act of 22d March, 1877, Purdon's Digest, p. 2135, section one, aldermen and justices of the peace are to be elected on the third Tuesday of February, and their term of office shall begin on the first Monday of May following. Section two provides that, in case of a term about expiring, or of any vacancy that may happen by death, resignation, or otherwise, the constable of the ward, borough, or township shall give at least twenty days' notice of an election to fill the office. And section three provides that if any vacancy shall occur after the time of the annual election, the Governor shall appoint one to fill the office until the first Monday of May succeeding the next ward or township election.

In conformity to these acts of Assembly, the defendant was elected alderman of the Sixth ward, Allegheny City, at the annual spring election, on the third Tuesday of February, 1882, which was the 21st day of the month, and was duly commissioned by the Governor. He was elected to fill the vacancy occasioned by the death of Charles W. Rado, an alderman of that ward, whose term did not expire till 1885, but who died on the 10th day of December, 1881. There was an interval of seventy-three days between the death of Rado and the time of the annual election on the third Tuesday of February.

It is suggested that the election of the defendant was

[The Com. of Pa. *ex rel.* H. W. Palmer, Att'y Gen'l *v.* D. R. Callen.]

illegal, under section eight, article four, of the Constitution of 1874, because the vacancy occurred within three calendar months immediately preceding the election. And that is the question raised by the suggestion and demurrer in this case.

The section of the Constitution referred to is in these words : 'The Governor shall nominate, and, by and with the advice and consent of two thirds of all the members of the Senate, appoint a Secretary of the Commonwealth and an Attorney General during pleasure, a Superintendent of Public Instruction for four years, and such other officers of the Commonwealth as he is or may be authorized by the Constitution or law to appoint. He shall have power to fill all vacancies that may happen in offices to which he may appoint, during the recess of the Senate, by granting commissions which shall expire at the end of their next session. He shall have power to fill any vacancy that may happen during the recess of the Senate in the office of Auditor General, State Treasurer, Secretary of Internal Affairs, or Superintendent of Public Instruction, in a judicial office, or in any other elective office which he is or may be authorized to fill. If the vacancy shall happen during the session of the Senate, the Governor shall nominate to the Senate, before their final adjournment, a proper person to fill said vacancy ; but in any such case of vacancy in an elective office, a person shall be chosen to said office *at the next general election*, unless the vacancy shall happen *within three calendar months* immediately preceding such election, in which case the election for said office shall be held at the *second succeeding general election*. In acting on executive nominations, the Senate shall sit with open doors, and in confirming or rejecting the nominations of the Governor, the vote shall be taken by yeas and nays, and shall be entered on the Journal.'

A casual reading of the section would seem to limit its application to such offices where, by the Constitution or law, the Senate had to be consulted, and had the power of confirmation or rejection. The particular offices named are all of that character. *First.* All offices to which the Governor has the original power of appointment. *Second.* Such elective offices as are specially named, viz.: Auditor General, State Treasurer, Secretary of Internal Affairs, Superintendent of Public Instruction, and a judicial office.

And on a close analysis of the section, this view is rather confirmed. Yet it may possibly bear a wider construction,

and may embrace offices where neither the Constitution nor the statute may require a confirmation by the Senate. For example, I see nothing in the Constitution in the way of the Legislature empowering the Governor to fill vacancies until the next general election in county offices. Whether this section would require all such appointments to be confirmed by the Senate, if the statute did not so provide, may be doubted. But, doubtless, in all such cases, the latter part of the section, which designates the time for filling the office by a new election, would apply, for all such officers are elected at the *general* election in November. The section may well apply to all State and county offices. But does it apply to city, ward, borough, or township offices?

Throughout the Constitution where the expression 'general election' occurs, it means the November election. 'The members of the General Assembly shall be chosen at the *general* election every second year,' article two, section two. 'The Governor shall be chosen on the day of the *general* election,' article four, section two. 'County officers shall be elected at the general elections,' article fourteen, section two. 'The *general election* shall be held annually on the Tuesday next following the first Monday of November,' article eight, section two. And the third section of article eight provides that 'all elections for city, ward, borough, and township officers for regular terms of service shall be held on the third Tuesday of February.' Then section eleven, of article five, provides that 'justices of the peace and aldermen shall be elected at the time of the election of constables.' If this section applies to the office of alderman, and if the election to fill a vacancy in that office shall be held at the *general* election, then it is in conflict with section two of article five.

To meet this objection, it is suggested that the word *general* in the section means the *annual* election for officers of that class. But that would be giving a totally different meaning to the term general election in this section from all other places where it is used in the Constitution. That is not to be presumed. A constitution is generally prepared with great deliberation, and the words carefully selected. Instead of giving that forced construction to this section, it is much more fair and reasonable to suppose it was not intended to apply to any officers of an elective character, except those who are elected at the general election.

This view of the section is confirmed when we consider the difference in the offices to be filled at the two elec-

tions.  All State and county officers are elected at the general election in November.  There is great reason why, in the case of a sudden vacancy, as by death, the election should not take place until the electors have had ample time to learn of the vacancy and select a suitable successor.  Three months' time in such cases is perhaps short enough.  But in city, ward, borough, or township offices that length of time is not necessary.  The twenty days prescribed in the statute for the constable's notice of the election is sufficient.

An alderman or justice of the peace is not properly a ward, borough, or township office, nor is the office a judicial office, strictly speaking, although the constitutional provisions on the subject are found in the article on the judiciary.  We must, however, consider it as belonging to the class of ward, borough, or township offices, because it is placed in that class by the Constitution.  And it is the only office of that class where, under existing laws, the Governor has power to appoint in case of vacancy.

Limiting the section to the officers named in it, and such other elective officers as are to be elected at the general election in November, gives full meaning to all the words of the section, involves no inconsistency, harmonizes it with all the parts of the Constitution, and meets all apparent or reasonable necessity for such a provision.  From the whole tenor of the section, it seems to me it was not intended to apply to any offices which are to be filled at the February election.

The demurrer is, therefore, sustained, and judgment is entered for defendant."

The Commonwealth thereupon took this writ, assigning for error the entry of judgment for the defendant on the demurrer.

*W. B. Rodgers* for plaintiff in error.

The learned judge in the Court below considered the office of alderman as belonging to the class of ward, borough, or township offices, and not as a judicial office.

The Constitution does not place aldermen in the class of ward, borough, or township offices.  True, the office is to be filled at the time of the ward election, but that fact does not make it a ward office.  That it is not a ward, borough, or township office was held by Judge Sterrett, in the Common Pleas, in Com. *v.* Kerr, 3 Pitts. Rep., 348; Lacock *v.* White, 7 Harris, 496.

It is sufficient to remark in relation to the act of May

[The Com. of Pa. *ex rel.* H. W. Palmer, Att'y Gen'l *v.* D. R. Callen.]

6, 1874, and that of 22d March, 1877, P. L. 12, that the power being conferred by both acts on the Governor to fill vacancies, election for the successor must be held under the provisions of the Constitution, and not of the acts of Assembly. Walsh *v.* Commonwealth, 8 Norris, 419.

The February election is as general as the November election; both are held in every election district in the State.

The general election for alderman is the February election. To construe the term general election, as used in this connection, to mean the general election for the class of officers to be chosen, does no violence, and renders operative the whole section.

*Henry Meyer* and *Montooth Bros.* for defendant in error.

In elections conducted according to the forms of law by legal voters, the *vox populi* is the *lex suprema*, and, except in a case so clear as to admit of no doubt, the decision of the people ought not to be overruled: Camphausen's Case, 3 Pitts. Rep., 57.

Callen was elected at a regular election, by lawful voters, and has been duly commissioned by the Governor. In addition to this, so far as legislative enactment can make the law in this case, he has been legally elected. (See act of March 22, 1877, Purdon's Digest, p. 2135.)

It is immaterial to him that the Governor may not, under the Constitution, have the power of appointment to fill vacancies in the office of alderman. He shows and stands upon a title derived from the people.

The provisions of section twenty-five, article five, of the Constitution, instead of showing that the term "judicial office," used in section eight, article four, applies to more than judges of courts of record, we think limits the meaning of the term to such judges.

No one using language in its ordinary sense speaks of an alderman as a judge, or as one holding judicial office.

While it may be true that an alderman is not strictly a ward officer, neither is his office a judicial one. Some of his duties may be judicial, but many of them are not. With as much propriety, the mayor of a city or the coroner of a county might be termed a judicial officer.

Historically, the office was executive. In the course of time, it drew to itself legislative, as well as magisterial, functions, but at no time was it regarded as a "judicial office."

[The Grand Lodge of the A. O. of U. W. of Penn'a *vs.* Stepp *et al.*]

It is not enumerated in the list of courts in which the judicial power of the Commonwealth shall be vested. Article five, section one.

It is not a county office, for it is not enumerated in the list of such offices. Article fourteen, section one.

It is equally clear that it is not a State office. It is, then, an office not specially classed, except so far as the Constitution has treated it, as in the category of ward offices. This has been done directly by fixing the time for election. Article five, section eleven.

We think the framers of the Constitution simply recognized the office as it existed, and left its control to future enactment.

NOVEMBER 20TH, 1882.—PER CURIAM : We affirm this judgment upon the opinion of the learned Court below.

Judgment affirmed.